**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PETER MIMEAULT and <br> REBECCA MIMEAULT, <br>           Plaintiffs, <br><br> vs. <br><br> GINGER PEABODY, ELIZABETH BANKS, <br> ROBERT CORNONI, ADAM GAUDETTE, <br> KEVIN KELLEY and PATRICIA JEFFRIES, <br> as they are Members of the ZONING BOARD <br> OF APPEALS OF THE TOWN OF <br> STURBRIDGE and INDIVIDUALLY, <br>           Defendants. | CIVIL ACTION <br> NO. 08-11909-TSH |

**MEMORANDUM OF DECISION**
**AND ORDER**

**July 8, 2010**

**HILLMAN, M. J.**

### Nature of the Proceeding

By Order of Reference dated November 14, 2008 and by consent of the parties, this case was referred to me for all purposes, including trial and entry of final judgment, in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. On February 26, 2010, Defendants filed an Amended Motion for Summary Judgment (Docket No. 15) on all four counts of Plaintiffs' Complaint. A hearing on that motion was held on April 12, 2010. During the hearing, and with the agreement of both parties, I remanded Count I (Mass. Gen. Laws ch. 40A, § 17) and Count IV (Declaratory Judgment, Mass. Gen. Laws ch. 231A) to the state court (Docket No. 22). As to the

remaining counts, Count II (42 U.S.C. § 1983) and Count III (Mass. Gen. Laws ch. 12 §§ 11H and 11I), I took the matter under advisement.  For the reasons that follow, Defendants' Motion for Summary Judgment on Count II is granted.  Pursuant to 28 U.S.C. § 1367(c)(3), I decline to exercise supplemental jurisdiction over Count III.  Therefore, Count III is remanded to the state court.

### Nature of the Case

Plaintiffs Peter Mimeault and Rebecca Mimeault (the "Mimeaults" or "Plaintiffs") brought this action against the members of the Zoning Board of Appeals of the Town of Sturbridge and as individuals (the "ZBA" or "Defendants").  Plaintiffs assert four claims against Defendants stemming from Plaintiffs' attempts to build a three stall garage on their property.  Plaintiffs filed a four count Complaint in the Massachusetts Superior Court, Worcester County (Civil Action No. 08-2395).  Because the Complaint raises a federal question, *i.e.*, a violation of the equal protection afforded under 42 U.S.C. § 1983, Defendants successfully removed the case to this court.  28 U.S.C. § 1441, *et seq*.

Defendants filed a motion for summary judgment on all counts of the Complaint, contending material facts are undisputed and show they did not violate any laws or rights in denying Plaintiffs' request to build the garage.

### Statement of Facts

**A. Facts Relating to the Mimeaults' Attempt to Build a Garage on their Property**

The Mimeaults wish to build a three car garage on property they own in Sturbridge, Massachusetts.[1]  They purchased the property now known as 76 South Shore Drive (hereinafter

---

[1] To the extent the parties do not dispute a material fact, no cite to the record will be given.

the "Premises") in 2004.  At the time of their purchase, the Premises was deeded as two parcels: Lot 25 on Plan Book 249, Plan 70, recorded in the Worcester District Registry of Deeds, then known as 76 South Shore Drive ("Lot 25"); and Lot 43 on Plan Book 249, Plan 70, recorded in the Worcester District Registry of Deeds, then known as 25 South Shore Drive ("Lot 43").  There is a single family, one story house with 1,134 sq. ft. of living area and a 200 sq. ft. enclosed porch located on Lot 25.  Lot 43 is unimproved.

The Mimeaults want to build a garage on Lot 43.  They filed a Request for Determination with the Town of Sturbridge Zoning Board of Appeals (the "ZBA") on or about August 21, 2007.  The Request for Determination would allow the ZBA to decide – as of right, without the necessity for a special permit – a request for alteration, reconstruction, extension or structural change of a pre-existing, non-conforming single-family or two-family residence, provided the change does not increase the non-conforming nature of the structure.  *Sturbridge Zoning Bylaws*, § 20.05.1 (Ex. Y to Defendants' Rule 56.1 Facts).  The Request was denied on or about September 12, 2007 with the ZBA finding, in part, that the proposed garage would "actually be a new structure on a separate parcel of vacant land owned by the applicant."  Further finding the proposed garage would not comply with zoning requirements for lot size and frontage, the ZBA recommended that the Mimeaults file for a special permit.

The Mimeaults followed the ZBA's recommendation and filed an application for a special permit on September 25, 2007.  A public hearing was held on November 14, 2007.  At the hearing, the Mimeaults agreed to a continuation of the public hearing so the ZBA could seek the opinion of Town Counsel regarding their application to build the garage.  Some weeks later, Town Counsel opined that if Lot 43 was a lawfully non-conforming lot under Mass.Gen. Laws

ch. 40A, § 6, then "a variance would likely be required." The Mimeaults received this opinion and requested that their application for a special permit be withdrawn without prejudice.

Following withdrawal of their application for a special permit, the Mimeaults engaged in a straw transaction whereby they merged or purported to merge Lots 25 and 43. Post-merger, their attorney wrote to the Town Planner informing her that the Mimeaults understood they should seek either a request for determination or a special permit application to build the garage. The Town Planner forwarded this letter to Town Counsel for review and advice "as to the proper procedure for handling this request." Town Counsel responded that a variance would still be required because the garage would be a new structure regardless of whether the lots were merged. Thereafter, the Mimeaults filed a petition for a variance. The ZBA held a public hearing on the petition for variance on October 8, 2008. At the hearing, the ZBA voted to deny the Mimeaults' petition.

With the exception of their proposed garage, the Mimeaults have never applied to the Town for a permit, authorization, or approval of any kind that has been denied. In the past, when they replaced the roof and replaced and/or repaired the foundation of their home, they had no negative experiences with Town officials in obtaining permits, variances, and the like.[2]

**B. Facts Relating to Other Sturbridge Residents Submitting Requests to the ZBA**

On or about October 11, 2006, the ZBA approved a request for determination for the property located at 110 Leadmine Road. The property owner sought permission to construct a

---

[2] There are additional material facts in the summary judgment record introduced by the Mimeaults in *Peter Mimeault's Affidavit in Opposition to Defendants' Motion for Summary Judgment*. Those facts – relating to Mr. Mimeault's beliefs and feelings about the ZBA's treatment of him – are identified and discussed, *infra*, in the Discussion section of this memorandum regarding the ZBA's alleged malicious or bad faith intent to injure the Mimeaults.

detached two story 12 x 20 ft. garage on the other side of a right of way from her house. The ZBA later voted to uphold its approval of the permit despite an appeal by abutters. *Sturbridge Zoning Board of Appeals, Minutes of Oct. 10, 2007* (Ex. BB, Plaintiffs' Rule 56.1 Facts). In so doing, the ZBA Chairperson noted that the approval may have been in error, but the Board as a whole felt they made the right decision based on the information before the board. *Id.* The ZBA noted future determinations would be "more thoroughly scrutinized" and that the garage must be used solely for motor vehicles and storage, and not for a workshop or apartment. *Id.*

On or about May 14, 2008, the ZBA approved a request for determination for the property located at 208 Hemlock Path. The property owner sought permission to build a detached two stall garage with storage above.

On or about February 13, 2008, the ZBA approved a request for determination for the property located at 12 Birch Street. The property owner sought permission to demolish an existing two car detached garage that was approximately 24 x 30 ft. and to construct a 24 x 50 ft. addition to their existing house consisting of a new two car garage, kitchen and porch.

On or about September 10, 2008, the ZBA approved a request for determination for the property located at 39 Bennetts Road. The property owner sought permission to construct an 18 x 22 ft. addition to their existing house consisting of an attached garage with storage above.

On or about June 14, 2006, the ZBA considered a request for determination for the property located at 5 Hawthorne Road. The property owner sought permission to construct an attached two car garage with a master suite above, a breezeway and three season porch. The ZBA approved the request on July 12, 2006. *Sturbridge Zoning Board of Appeals Minutes of July 12, 2006* (Ex. Z, Plaintiffs' Rule 56.1 Facts).

On or about July 9, 2008, the Board of Appeals granted a special permit, which had been requested pursuant to § 20.12 of the Sturbridge Zoning Bylaws, to the owners of 94 South Shore Drive for two additions totaling 762 sq. ft. and an 891 sq. ft. garage.

At their September 9, 2009 meeting, the ZBA decided there was "too much gray area" in the zoning ordinance on Determinations, and invited the Town Counsel or Town Planner to come to a meeting to address the issue. *Sturbridge Zoning Board of Appeals Minutes of Sept. 9, 2009* (Ex. CC, Plaintiffs' Rule 56.1 Facts).

## **Discussion**

Under Count II of the Complaint, Plaintiffs allege Defendants violated their Fourteenth Amendment rights to equal protection under the Federal Civil Rights Act, 42 U.S.C. § 1983. It states:

> Every person who, under color of any statute, ordinance regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Plaintiffs contend that because Defendants required them, and not others similarly situated, to obtain a variance to build a garage, their constitutional rights, privileges, or immunities have been deprived. Plaintiffs specifically complain that they "have not been allowed to develop their property to the full extent allowed by law, have lost their full use and enjoyment of their property and have incurred legal and engineering costs." *Complaint*, ¶ 72. Defendants now move arguing that Plaintiffs' facts are insufficient as a matter of law to support such an equal protection claim. On the other hand, Plaintiffs argue there is a factual dispute as to how they

were treated and about what motivated Defendants' conduct. Both parties argue about the application of qualified immunity.[3]

Summary judgment is appropriate where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1st Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." *Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 152 (1st Cir. 2009) (quoting *Calero-Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004) (internal citation omitted)).

Summary judgment involves the shifting of burdens. The moving party bears the burden to demonstrate the absence of a genuine issue of material fact within the record. *Id*. at 153. Once the moving party meets this burden, the burden falls upon the nonmoving party, who must oppose the motion by presenting facts that show a genuine "trial-worthy issue remains." *Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir. 1997) (citing *National Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995); *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994). These facts must not be merely allegations or denials of the moving party's pleadings. *Id*. "Conclusory allegations [and] improbable inferences" are insufficient to overcome summary judgment. *Sensing*, 575 F.3d at 153 (quoting *Carroll*, 294 F. 3d at 236-37 (internal quotations

---

[3] This court need not address the application of qualified immunity because it finds defendants are entitled to summary judgment on Count II, and Count III is remanded to the state court.

omitted)). "The test is whether, as to each essential element, there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Id.* (citations omitted).

In deciding a motion for summary judgment, the court is required to view the facts in the light most favorable to the non-moving party. *Dennis v. Osram Sylvania, Inc.*, 549 F.3d 851, 855 (1st Cir. 2008) (quoting *Benoit v. Technical Mfg. Corp.*, 331 F. 3d 166, 173 (1st Cir. 2003).

It is settled equal protection law here in the First Circuit that similarly situated persons are to receive substantially similar treatment from the government. *Tapalian v. Tusino*, 377 F.3d 1, 5 (1st Cir. 2004); *Barrington Cove Ltd. P'ship v. R.I. Hous. and Mortgage Fin. Corp.*, 246 F.3d 1, 7-8 (1st Cir. 2001); *Rubinovitz v. Rogato*, 60 F.3d 906, 909-10 (1st Cir. 1991). In instances like here, where plaintiffs are not members of a suspect race or religion, this circuit has developed a "class of one" analysis. *E.g.*, *SBT Holding, LLC v. Town of Westminster*, 547 F.3d 28, 34 (1st Cir. 2008) (where developer who was not member of suspect class, alleged town officials violated its equal protection rights by issuing invalid orders under the Massachusetts Wetland Protections Act). Under the "class of one" analysis, a plaintiff must present facts that show she was treated differently than others similarly situated, that there was no rational basis for the difference in treatment, and that the selective treatment was based on a malicious or bad faith intent to injure her. *Rubinovitz*, 60 F.3d at 909-10; *Yerardi's Moody Street Restaurant & Lounge v. Board of Selectmen of the Town of Randolph*, 932 F.2d 89, 94 (1st Cir. 1991). Accordingly, to survive summary judgment, Plaintiffs must set forth facts showing that Defendants treated them differently, without reason, and that Defendants were motivated by malice or a bad faith intent to injure them.

Despite there being three prongs to the "class of one" test, this court need not address whether Plaintiffs have satisfied the first two prongs (*i.e.*, whether and why they were allegedly treated differently), because even assuming *arguendo* they could pass these hurdles, Plaintiffs have utterly and completely failed to proffer facts showing Defendants' acts were motivated by malice or bad faith. *Yerardi's*, 932 F.2d at 92 (citing *LeClair v. Saunders*, 627 F.2d 606, 610 (2nd Cir. 1980) (where court determined no equal protection violation because plaintiff's evidence showed merely selective treatment and neither bad faith nor malice was established)).

In *Yerardi's*, the First Circuit affirmed a judgment on a jury verdict for the defendant town, finding in the record "nothing more than tenuous insinuation" regarding the defendant town's bad faith toward Yerardi's. *Id.* at 92. On appeal, Yerardi's pointed to several pieces of evidence it believed supported the jury's finding of malicious intent to injure it, *to wit*: (1) that its liquor license, and not the other thirteen licenses in town, had been "rolled back" from 2:00 a.m. to 1:00 a.m.; (2) there was an inaccurate representation by the town for its decision against Yerardi's; (3) town officials had negative experiences at Yerardi's at various events that might make them biased against Yerardi's; and, (4) that there had been confrontations at Yerardi's with an employee. *Id.* at 92-94. The First Circuit was unconvinced. It noted such evidence amounted to only "the gossamer proofs" in light of the bad faith standard in the equal protection analysis. *Id.* at 94. *Cf. Columbus v. Biggio*, 76 F. Supp. 2d 43, 49 (D.Mass. 1999) (where plaintiffs survived motion to dismiss because there was enough evidence of a "malicious orchestrated campaign to survive the high hurdle of Rule 12(b)(6)").

The First Circuit has set the bar even higher for developers, like Plaintiffs, who assert a violation federal constitutional rights. Because bad faith or malice is such an important aspect to

a viable claim, plaintiff-developers who complain about departures from administrative procedures or the denial of a permit, rarely survive motions to dismiss. *See, e.g.*, *PFZ Properties, Inc. v. Rodriguez*, 928 F.2d 28, 32 (1st Cir. 1991) (affirming dismissal of complaint as lacking requisite bad faith where the plaintiff-developer merely alleged that its project was treated differently from others under consideration) citing *Creative Environments v. Estabrook*, 680 F.2d 822, 833 (1st Cir. 1982) ("Every appeal by a disappointed developer from an adverse ruling by a local ... planning board necessarily involves some claim that the board exceeded, abused or 'distorted' its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason."); *SFW Arecibo, Ltd. v. Rodriguez*, 415 F.3d 135, 142 (1st Cir. 2005) (court affirmed dismissal of equal protection claim where plaintiff-developer alleged it was treated different from other developers who went before the local planning board); *Torromeo and MDR Corp.* v. *Town of Fremont, New Hampshire*, 438 F.3d 113, 118-19 (1st Cir. 2006) (dismissal of developer's equal protection claim warranted where developer alleged it was treated differently than similarly situated property owners). Based upon the reasoning of *Creative Developments* and its progeny, courts have routinely refused to accord plaintiff-developers with federal rights under the Equal Protection Clause of the Fourteenth Amendment.

Here, there is not a scintilla of evidence showing Defendants' animosity, ill-will, or bad faith toward Plaintiffs. Viewing the facts in the light most favorable to Plaintiffs, the sum and substance of Plaintiffs' allegations regarding Defendants' bad faith and malicious intent are as follows:

- I felt as though I was being coerced into a course of action, filing for a variance, which required a third prong of proof which related to the topography of the land and hardship that, in retrospect, I found out had not been required of other parties. *Peter Mimeault's Affidavit in Opposition to Defendants' Motion for Summary Judgment* ("*PM Aff.*"), ¶ 11.

- Clearly I was disturbed by the actions of the Board in reviewing their actions on cases similar and even more nonconforming that my own and outraged when I reviewed those decisions in light of the provisions of [the local ordinance] in which the Board appears to have clearly exceeded its authority and misdirected me, *for whatever reason*, away from the right of appeal on a determination by telling me that they would not grant me a Special Permit. *Id*. at ¶ 22 (emphasis added).

- I believe I was singled out for adverse treatment by the Board's [*sic*]:
  - wrongfully discarding the protected status of the preexisting nonconforming lot which was made less nonconforming with the addition of the abutting parcel; and
  - wrongfully classifying the structure as nonconforming when the structure met all setback, size and height By-Law Restrictions; and
  - selectively treating us in a manner different from treatment granted to others similarly situated, both before and after us, with new rules, and the imposition of procedures and the requirement that we meet hardship criteria for a variance when no such interpretation was made, placed, imposed, requested or interpreted in the circumstances of others similarly situated. *Id*. at ¶ 23.

- We were wrongfully singled out and burdened with a long process of parallel petitioning which created a negative influence, subjective ill will and took over the Board's duty to uphold the Zoning By-Laws. As such, I believe that, *while common courtesies were shown throughout the meetings,* the standard to which our Petition was held, the standards applied to us and the manner in which it was handled constituted a course of steerage, discrimination and a series of unreasonable requirements, to which others were not subjected, which constituted a gross abuse of power, showed ill will and sought to direct us to failure. *Id*. at ¶ 24 (emphasis added).

- I would agree that the nature of all discussions [with the ZBA] was such that it was accommodating. In the times that I needed to speak on important matters, I was allowed time. *Deposition of Peter Mimeault*, p. 58, Ex. B to Defendants' Rule 56.1 Facts.

- Again, I wouldn't call it a difficulty thing. I wouldn't call it animosity or anything. It seemed to be a little bit beyond the normal course of events for processing this type of an application. *Id*. at 73.

In summary, Plaintiffs ask this court to infer from a self-serving affidavit and their own testimony that Defendants' procedures and processes were employed solely to harm Plaintiffs. Instead of pointing to specific statements or actions by the ZBA against them, Plaintiffs merely

complain it was "the inconsistency of [the ZBA's] dealings" with them as compared to other petitioners that shows the ZBA's bad faith. *Plaintiffs' Memorandum of Law*, p. 11.

In contrast, defendants submit facts showing that, with the exception of petitioning for the proposed garage, Plaintiffs have never applied for a permit, authorization, or approval of any kind that has been denied, even when they replaced their roof and repaired the foundation to their home. *Defendants' Statement of Undisputed Material Facts*, ¶¶ 30-32.

Moreover, just because Plaintiffs *may* have been treated differently than others in town,[4] different treatment is not evidence of bad faith or malice. *E.g.*, *Yerardi's*, 932 F.2d at 92 ("[d]ifferent treatment does not itself prove bad faith intent to injure"). After all, as the *Yerardi's* court aptly noted, without a showing of malice, the test "would collapse on itself, allowing a finding that equal protection rights were violated simply by the showing of different treatment." *Id*. Plaintiff Peter Mimeault acknowledges he knows of no scheme, malicious intent, or even any reason for that matter, for Defendants' actions (the Board "misdirected me, for whatever reason"). *See PM Aff.*, ¶ 22. Mr. Mimeault even acknowledges at several points that he was treated with courtesy, and that Defendants sought the advice of Town Counsel in how to deal with Plaintiffs' applications. Plaintiffs burden is more, much more. Plaintiffs must show Defendants' actions stemmed from malice or bad faith. *See Yerardi's,* 932 F.2d at 94 (where a plaintiff does not rest equal protection claim on alleged violation of fundamental constitutional right [*e.g.*, a claim involving race or religion], it is essential that the plaintiff "scrupulously me[e]t" the "bad faith" element of its claim).

---

[4] The use of the term "may" is appropriate and intentional. This court has serious reservations as to whether Plaintiffs' summary judgment record sufficiently supports Plaintiffs' claim of selective treatment (i.e., whether and why Plaintiffs were treated differently). However, as noted above, the dearth of evidence regarding the bad faith/malice prong of the test, makes for a simple disposition of plaintiffs' equal protection claim.

A review of the facts show Defendants consulted with Town Counsel in trying to guide Plaintiffs through a confusing zoning application process.  Whether the process was confusing because of the town's bylaws or because Plaintiffs' application concerned two lots and a new, freestanding structure, the facts show the process was merely that – confusing – and not driven by animus or bad faith on the part of Defendants.  None of the facts alleged by Plaintiffs, alone or even in the aggregate, amount to conduct that could ever be construed as egregious, malicious, or motivated by bad faith.  As a matter of law, Defendants have not violated Plaintiffs' rights under the equal protection clause of the Constitution.

## Conclusion

For the reasons set forth herein and after reviewing the summary judgment record in its entirety, Defendants' Motion for Summary Judgment is **GRANTED** as to Count II and **REMANDED** as to Count III.

/s/Timothy S. Hillman
TIMOTHY S. HILLMAN
MAGISTRATE JUDGE